IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 17-20007-JAR-2 |
| SHEILA M. BEST, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Sheila M. Best's Emergency Motion for Compassionate Release (Doc. 319) under 18 U.S.C. § 3582(c)(1)(A). Best seeks release on the ground that she has numerous medical conditions that place her at heightened risk of serious illness from COVID-19. For the reasons set forth below, the Court grants the motion.

**I.    Background**

On December 21, 2018, Best appeared before Judge Carlos Murguia and pleaded guilty to one count of conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846.[1] On December 6, 2019, Judge Murguia sentenced Best to 216 months' imprisonment, followed by five years of supervised release.[2]

Best is incarcerated at FCI Pekin in Illinois. As of June 3, 2021, the Bureau of Prisons ("BOP") reports that 729 inmates have tested positive for COVID-19 out of 1,159 inmates tested

---

[1] Doc. 134.

[2] Doc. 254. Judgment was entered on December 12, 2019. *Id.* On September 14, 2020, Best filed a motion to vacate under 28 U.S.C. § 2255, Doc. 279, along with a motion to appoint counsel, Doc. 280. Those motions remain pending.

at this facility.³  The BOP further reports that FCI Pekin has no active inmate cases, nine active staff cases, and no deaths attributed to COVID-19.⁴  Best is 56 years old, and her projected release date is February 3, 2033.

On February 12, 2021, Best filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) on the basis that her medical conditions place her at an increased risk of severe illness from COVID-19.  Best asserts that she suffers from chronic obstructive pulmonary disease ("COPD"), hypertension, obesity, asthma, and substance use disorders.  Best is also a former smoker of about 34 years.  In addition, Best claims that she has congestive heart failure and needs surgery, though she does not indicate why she needs surgery.  On March 2, 2021, the Court appointed counsel from the Criminal Justice Act Panel to represent Best in connection with her motion.⁵  Best's appointed counsel has entered an appearance and filed a reply on her behalf.

In the reply, Best requests that the Court reduce her sentence to time served and extend her five-year term of supervised release to 200 months.  Best proposes that the Court require her to serve that additional 140 months of supervised release—which approximates the remainder of her custodial sentence—under the condition of home detention.  Best would then serve the five-year term of supervised release originally imposed in this case.  Best's release plan to live with her brother and his wife in Leavenworth, Kansas, has been approved by the U.S. Probation Office.

---

³ *COVID-19 Coronavirus: COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited June 3, 2021).

⁴ *Id.*

⁵ Doc. 320.

## II. Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions."[6] "One such exception is contained in [18 U.S.C.] § 3582(c)(1)."[7] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[8] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before reducing a term of imprisonment, a court must find that (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[9] The Tenth Circuit recently clarified that "the Sentencing Commission's existing policy statement is applicable only to motions filed by the Director of the BOP, and not to motions filed directly by defendants."[10]

## III. Discussion

### A. Exhaustion

Best requested compassionate release from the warden of FCI Pekin in July 2020.[11] The parties agree that Best has satisfied the exhaustion requirement under § 3582(c)(1)(A). The

---

[6] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[7] *Id.*

[8] Pub. L. No. 115-391, 132 Stat. 5194.

[9] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

[10] *Maumau*, 993 F.3d at 837.

[11] Doc. 321-1.

Court thus considers whether Best's request is supported by extraordinary and compelling reasons and whether the applicable § 3553(a) sentencing factors weigh in favor of a sentence reduction.

### B.     Extraordinary and Compelling Reasons

Best asserts that her medical conditions put her at an increased risk of severe illness from COVID-19, and thus constitute an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A)(i). Best's medical records confirm that she suffers from COPD, hypertension, obesity, and asthma.[12] She is also a former smoker and suffers from substance use disorders. The Centers for Disease Control and Prevention lists COPD, obesity, history of smoking, substance use disorders, and asthma—if it's "moderate to severe"—as health conditions that "can make you more likely to get severely ill from COVID-19," and "possibly high blood pressure (hypertension)" may do the same.[13]

While the government acknowledges that Best suffers from health conditions that place her at an increased risk of severe illness from COVID-19, it disputes her claim that she also has congestive heart failure and needs surgery, as her medical records do not support these claims. The Court agrees. Best's medical records state that there is "[n]o evidence for congestive heart failure" or "acute cardiopulmonary disease."[14] Best also asserts that "she has been in dire need of an operation and that the BOP has neglected to schedule the needed operation,"[15] but she does

---

[12] *See* Doc. 321 at 17–18.

[13] *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021). Best does not indicate if her asthma is moderate or severe.

[14] Doc. 321 at 18.

[15] Doc. 319 at 4.

4

not specify what surgery she needs and her medical records make no mention of potential surgery.

Regrettably, Best has already had COVID-19. She tested positive for COVID-19 on November 2, 2020. At the time, Best's medical records generated by the BOP classified her as an "asymptomatic person in quarantine."[16] But elsewhere, her medical records note that she was "covid positive with body aches and cough," and because of those symptoms, a nurse decided to "follow-up daily" with her.[17] Two days later, on November 4, Best reported the following symptoms: "[c]ough or shortness of breath, [n]asal congestion, runny nose, sore throat, [f]atigue, aches and pains, [h]eadache, persistent pain in chest, [l]oss of taste and/or sense of smell, [and] [d]iarrhea."[18] She continued to report symptoms until at least November 13. And according to Best, she still experiences COVID-19 symptoms, including body aches, headaches, and shortness of breath. While Best declined to be vaccinated when she was first offered the COVID-19 vaccine in December 2020, she has since "changed [her] mind" and put in a request to receive the vaccine.[19]

Ultimately, the government concedes, and the Court agrees, that the combination of Best's medical conditions that place her at an increased risk of severe illness if she contracts COVID-19 again amount to an extraordinary and compelling reason for a sentence reduction. Nonetheless, the government contends that, when balanced with the § 3553(a) factors, Best "fail[s] to demonstrate a situation so severe that early release . . . is warranted."[20]

---

[16] Doc. 329-1 at 55.

[17] *Id.* at 39.

[18] *Id.* at 33.

[19] Doc. 329-2. For this reason, the Court need not address the role that a refusal of the COVID-19 vaccine should play in deciding a motion for compassionate release.

[20] Doc. 321 at 19.

C.     Section 3553(a) Factors

Although Best has met her threshold burden of establishing an extraordinary and compelling reason for a sentence reduction, the Court must still consider whether the § 3553(a) sentencing factors support such a reduction. Those factors include (1) "the nature and circumstances of the offense," (2) "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," and (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct."[21]

While this is a close case, the Court finds that the § 3553(a) factors support reducing Best's sentence pursuant to § 3582(c)(1)(A). Best's offense was undoubtedly serious. Best pleaded guilty to a significant conspiracy to possess with intent to distribute and to distribute 50 grams or more of methamphetamine. She was a member of a large-scale drug trafficking organization in which she would buy methamphetamine and then resell it for a profit. On one occasion, Best sold a firearm to an undercover officer during a controlled methamphetamine transaction. Best also enlisted a co-defendant to "assist[] [her] with methamphetamine deliveries, pick[] up methamphetamine on [her] behalf . . . , and provide[] [her] with transportation to drug transactions."[22] The Presentence Investigation Report held Best accountable for 63.5 kilograms of "ice" methamphetamine.[23]

And this offense was not the first drug trafficking offense that brought Best to federal court. In 2009, Best pleaded guilty in the Western District of Missouri to conspiracy to distribute more than 50 grams of methamphetamine.[24] The court sentenced her to a 32-month term of

---

[21] 18 U.S.C. § 3553(a).

[22] Doc. 232 ¶ 19.

[23] *Id.* ¶ 76.

[24] W.D.M.O. Case No. 08-CR-00090-HFS-8.

6

imprisonment, followed by three years of supervised release.[25]  Best began participating in the conspiracy at issue in this case shortly after completing that term of supervised release in 2014.

However, Best states that she participated in the two respective conspiracies during "two traumatic periods in her life.  Time periods where her struggle with addiction was pushed to its limit by virtue of the loss of a reason for living."[26]  Indeed, Best's oldest son committed suicide in 2007 at the age of 19, and her youngest and only remaining son died in a car accident in 2015 at the age of 20.[27]  This history does not excuse her criminal conduct.  It does, however, offer important context for the circumstances under which the offenses were committed.[28]  And while the seriousness of Best's offense has not changed since the court sentenced her, the environment where Best is serving her sentence certainly has.  "When the [c]ourt sentenced [Best], the [c]ourt did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic."[29]

Moreover, Best has used her time in custody to better herself.  While rehabilitation alone is not a ground for a sentence reduction under § 3582(c)(1)(A),[30] the Supreme Court has explained that "evidence of postsentencing rehabilitation may be highly relevant" under § 3553(a), providing the "most up-to-date picture of [the defendant]'s 'history and

---

[25] *See id.*

[26] Doc. 329 at 21.

[27] Doc. 232 ¶ 110.

[28] *See Pepper v. United States*, 562 U.S. 476, 488 (2011) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." (quoting *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937))).

[29] *United States v. Zukerman*, 451 F. Supp. 3d 329, 336 (S.D.N.Y. 2020) (quoting *United States v. Rodriguez*, 451 F. Supp. 3d 392, 407 (E.D. Pa. 2020)).

[30] *See* 28 U.S.C. § 944(t).

characteristics.'"[31]  It also "sheds light on the likelihood that [the defendant] will engage in further criminal conduct."[32]  During her time in prison, Best has earned her GED, participated in faith-based classes, and completed numerous other courses on a range of topics, including basic sign language, effective communication strategies, drug abuse, HIV prevention, anger management, forklift safety, "getting motivated to change," "understanding pandemics," and "finding medical resources."[33]

Best's disciplinary record also demonstrates her rehabilitation.  Best has incurred no disciplinary infractions while in prison.  "[T]he absence of any disciplinary infraction related to violence or drug use[] demonstrates that [s]he is unlikely to commit future criminal acts or pose a danger to the community."[34]  A female pattern risk scoring form obtained from the BOP has placed Best at a "low" risk level, and she is currently incarcerated at FCI Pekin's satellite camp, which houses minimum-security female offenders.  Best's behavior throughout her time in custody, as well as her age,[35] allay concerns of potential future criminal conduct.  And any potential risk to the community will be further mitigated by the conditions of Best's release, as discussed below, which will include a substantial period of home detention.

The Court finds that reducing Best's sentence to time served—when combined with an additional term of supervised release under the condition of home detention—is sufficient, but

---

[31] *See Pepper*, 562 U.S. at 491 (quoting 18 U.S.C. § 3553(a)).

[32] *Id.*

[33] *See* Doc. 329-4.

[34] *United States v. Yu*, No. 90 CR. 47-6, 2020 WL 6873474, at *5 (S.D.N.Y. Nov. 23, 2020).

[35] *See* U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 12 (2004), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf ("Recidivism rates decline relatively consistently as age increases. . . .  Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent."); *see also United States v. Rios*, No. 3:94CR112, 2020 WL 7246440, at *4 (D. Conn. Dec. 8, 2020).

not greater than necessary, to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public.

### D.     Additional Term of Supervised Release

Section 3582(c)(1)(A) allows the Court to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." Here, Best proposes that the Court extend her total term of supervised release to 200 months and require that she serve the first 140 months—approximately the remainder of her custodial sentence—under the condition of home detention.

The Court finds that an additional term of supervised release would adequately address the seriousness of Best's offense, afford adequate deterrence, and protect the public, while balancing the extraordinary and compelling reasons that warrant compassionate release.[36] But the Court declines Best's request to impose an additional 140-month term of supervised release under the condition of home detention, for a total term of supervised release of 200 months. Instead, the Court will impose an additional 60 months of supervised release. Best will serve this additional 60-month term of supervised release under the condition of home detention.

Accordingly, the Court reduces Best's sentence of 216 months to time served and imposes an additional term of supervised release of 60 months to start immediately upon her release, with the added special condition of home detention. This 60-month term of supervised release will be followed by the previously-imposed 60-month term of supervised release.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Sheila M. Best's Motion for Compassionate Release (Doc. 319) is **granted**. The Court reduces Best's sentence to

---

[36] The Court has the authority to "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release," 18 U.S.C. § 3583(e)(2), and finds it appropriate to exercise that authority here without a hearing, as an additional term of release is authorized by statute and is a modification proposed by Best. *See* 18 U.S.C. § 3582(c)(1)(A); Fed. R. Crim. P. 32.1(c)(2).

time served.  The Court imposes an additional 60 months of supervised release, for a total term of supervised release of 120 months.  All previously imposed terms and conditions of supervised release shall remain in effect.  The Court imposes the following additional special conditions of supervised release: Best shall be on home detention for 60 months and is restricted to her residence at all times except for medical necessities and court appearances or other activities specifically approved by the U.S. Probation Officer.  At the discretion of the U.S. Probation Officer, Best may be required to wear a location monitoring device, which will include Radio Frequency, Global Positioning System and/or Random Tracking, and shall abide by all technology requirements.  Best must follow all location monitoring procedures specified by the U.S. Probation Officer, and must contribute toward the cost, to the extent she is financially able to do so, as directed by the Court and/or U.S. Probation Officer.  Best shall self-quarantine during the first fourteen days of her term of supervised release.

**IT IS FURTHER ORDERED** that there being a verified residence and an appropriate release plan in place, this Order is stayed for up to fourteen days to make appropriate travel arrangements and to ensure Best's safe release.  Best shall be released as soon as appropriate travel arrangements have been made and it is safe for her to travel.  There shall be no delay in ensuring travel arrangements are made.  If more than fourteen days are needed to make appropriate travel arrangement and ensure Best's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

Dated: June 3, 2021

S/ Julie A. Robinson  
JULIE A. ROBINSON  
CHIEF UNITED STATES DISTRICT JUDGE